**ATLANTIC SUGAR, LTD., and Redpath Sugars, Ltd., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**and**

**Amstar Corporation, Party-in-Interest.**

**Court No. 80–5–00754.**

United States Court of International Trade.

Dec. 14, 1982.

Rogers & Wells, New York City (Robert V. McIntyre and George C. Smith, New York City, on brief), for plaintiffs.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C. (David M. Cohen, Director, Commercial Litigation Branch, Francis J. Sailer, Commercial Litigation Branch, Washington, D.C., on brief), for defendant.

1. Sugars and Sirups From Canada, Inv. No. 731–TA–3, (March, 1980).

2. *Atlantic Sugar, Ltd., et al. v. United States,* 2 CIT 18, 519 F.Supp. 916 (USCIT 1981).

3. Sugars and Sirups From Canada, Inv. No. 731–TA–3 (October 5, 1981).

Sullivan & Cromwell and Baker & McKenzie, New York City, for party-in-interest.

## MEMORANDUM AND ORDER

WATSON, Judge:

Plaintiffs, Atlantic Sugar, Ltd. and Redpath Sugars, Ltd., challenge (under section 516A(a)(2) of the Tariff Act of 1930 (19 U.S.C. § 1516a(a)(2))) a final determination made by the International Trade Commission (ITC) in an antidumping investigation. The ITC found that the importation of refined sugar from Canada, sold at less than fair value from October 1, 1978 through March 31, 1979 was causing material injury to an industry in the United States.[1]

The parties have cross-moved for judgment on the administrative record under Rule 56.1. Due to miscalculations in the data underlying some of the ITC findings, the Court remanded the matter to the ITC for reconsideration.[2] In the resulting affirmation of its earlier determination of injury, the ITC found that, even with the corrected data, the aggregate profits for the domestic producers continued to decline.[3]

The Court then rejected the ITC's aggregation method as an inappropriate approach to finding that injury was experienced by "the producers of all, or almost all, of the production within that market," as required by section 771(4)(C) of the Tariff Act of 1930 (19 U.S.C. § 1677(4)(C)). The matter was remanded to the ITC with orders that the Commission "determine whether the Revere Sugar Corporation suffered injury within the meaning of this statute and if not, whether there is any reason to conclude that those who *were* injured are the producers of all or almost all the production in the region."[4] This resulted again in a determination of injury[5] which is now before the Court for review.

4. *Atlantic Sugar, Ltd., et. al. v. United States,* 2 CIT 295 (USCIT 1981).

5. Sugars and Sirups From Canada, Inv. No. 731–TA–3 (April 26, 1982).

■ In examining the ITC's most recent determination of material injury, the Court concludes that the finding of injury to Revere was not made in accordance with the law and must therefore be held unlawful under section 516A(b)(1)(B) of the Tariff Act (19 U.S.C. § 1516a(b)(1)(B)).

The ITC based its determination that Revere was injured upon an evaluation of data that was not confined to Revere's operations within the eleven state Northeast regional limitation of this investigation.[6] Specifically, the Commission found injury to Revere based on data indicating declines in: 1) production; 2) capacity utilization; 3) sales to customers in the region; 4) person hours worked; 5) worker productivity; 6) profits; as well as 7) consistent underselling by the Canadian producers.[7]

Factors one through six of the above were based on information that included Revere's Chicago plant, located outside the regional boundaries of the investigation.

■ The regional industry provision, and therefore an investigation of material injury to a regional industry, is limited to producers "within such market who sell all or almost all of their production of the like product in question in that market." Section 771(4)(C) of the Tariff Act of 1930, (19 U.S.C. § 1677(4)(C)).

■ Since it has already been determined that a regional industry in a separate and isolated market, with specified boundaries does exist,[8] the ITC may not now ignore those boundaries when evaluating evidence for the purpose of determining whether the same regional industry has been materially injured. The proscription against use of data from elsewhere is neces-

sary to insure that the regional industry found to exist at an earlier juncture is actually the subject of the later material injury investigation.

Here, the Chicago plant is one of only three plants operated by Revere.[9] Moreover, production at this plant was of sufficient quantity to potentially render inaccurate or otherwise confuse the evaluation of the effect of Canadian sugar imports upon Revere's operations in the Northeast region.

■ The Commission also erred in failing to take into account information in the record regarding data for Revere from the years 1976 and 1977. While analysis of injury to the other regional producers was based on their performance over the five-year period of 1975 to 1979, the ITC confined its investigation of injury to Revere to information covering only two years— 1978 and 1979, with an explanation that the data in the record concerning injury to Revere was limited to this period.[10] Revere officials reported that data for operations prior to acquisition by Revere on December 14, 1977 was not available to them and probably was still being held by Revere's predecessor in interest, Ingredient Technology Corporation.

Notwithstanding these facts, information regarding Revere's sales and profits for 1976 and part of 1977 was available, and indeed was part of the record.[11] This additional information could be important to a complete and accurate analysis of the effect of Canadian imports upon Revere.

The fact that this information was not obtained directly from Revere does not lessen the Commission's statutory obligation to use the "best information available" when a

6. The region consists of the states of Connecticut, Maine, Massachusetts, Michigan, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island and Vermont.

7. Sugars and Sirups From Canada, Inv. No. 731–TA–3 (April 26, 1982).

8. *Atlantic Sugar, Ltd., et. al. v. United States*, 2 CIT 295 (USCIT 1981).

9. Revere's plants are located in Brooklyn, New York; Charlestown, Massachusetts; and Chicago, Illinois.

10. Sugars and Sirups From Canada, Inv. No. 731–TA–3, (April 26, 1982), p. 3.

11. List 2, Doc. 50 of the Administrative Record.

party or any other person refuses or is "unable" to provide the requested data. 19 U.S.C. § 1677e(b); *Budd Co., Railway Division v. United States,* 1 CIT 67, 507 F.Supp. 997 (USCIT 1980). Clearly, as in this case, where the information is available and has been made part of the record, the Commission must consider the information, and if it chooses to disregard the data in its evaluation, it must explain its reasons.

The Court finds no lack of substantial evidence or lack of conformity to the law in the other findings to which plaintiffs object. Plaintiffs claim that Revere's agreement with the Philippine Exchange Company, Inc. (Philex) guaranteed Revere a profit, and that consequently Canadian imports could have no material effect on Revere's profitability.

The Court's view is that the Commission could reasonably find that "it is not at all clear that Revere was guaranteed a profit by the terms of the agreement," as was stated in Revere's auditor's report. Further, this Court has already noted that no single factor, including profitability, is conclusive or decisive in a material injury determination.[12]

 Plaintiffs have not persuaded the Court that the failure of Revere to supply information for the period prior to its acquisition of the plants gives rise to an inference that the evidence is unfavorable to it. The "adverse inference rule" should not apply in the case of Revere, inasmuch as this rule has vitality only "when a party has relevant evidence within his control which he fails to produce." *International Union (UAW) v. N.L.R.B.,* 459 F.2d 1329, 1336 (D.C.Cir.1972). It is undisputed that Revere did not have that information.

 In the case of Northern Ohio, even if an adverse inference were to result from the failure to supply some of the requested information,[13] the Court cannot conclude that the significant decrease in sales and profitability experienced by this producer constitutes insubstantial proof of material injury. Accordingly, the finding of material injury to Northern Ohio Sugar Company is affirmed.

 The Commission's finding of material injury to Refined Syrups and Sugars (RS & S) is substantially supported by evidence of significant losses for three years. Plaintiffs contend that there is a striking disparity between the Commission's analysis of Revere and that of RS & S. In the case of Revere, the Commission found material injury based upon a decline in economic indicators over the period of study, even though Revere made profits during that time. When investigating RS & S, the Commission found injury due to substantial losses suffered by RS & S, even though RS & S's losses *decreased* over time and several other indicators improved. Trends in economic indicators or the simple fact of profit or loss are not, in and of themselves "... decisive guidance with respect to the determination by the Commission of material injury." 19 U.S.C. § 1677(7)(E)(ii).

 Finally, the Court wishes to elaborate upon its earlier criticism of the use of aggregate data in a regional industry investigation. As was noted in the Court's previous opinion on this matter,[14] the objective of a material injury investigation with respect to a regional industry is to determine whether "the *producers* of all or almost all of the production within that market are materially injured...." § 771(4)(C) of the Tariff Act of 1930 (19 U.S.C. § 1677(4)(C)). [Emphasis supplied]

The Court recognizes that while this investigative obligation should be strictly enforced in circumstances where there are a limited number of producers, the require-

---

**12.** *Atlantic Sugar,* 2 CIT 295 (USCIT 1981).

**13.** Northern Ohio did not supply information on production, pricing, capacity, employment, wages, inventories, capital expenditures and research and development expenditures.

**14.** *Atlantic Sugar,* 2 CIT 295 (USCIT 1981).

ment of individual injury determinations may present insurmountable administrative problems where there are numerous producers. The Court therefore recognizes that in appropriate cases, the finding of injury may be based upon methods other than direct investigation of each producer.

■ Therefore, in a situation with a large number of regional producers, use of aggregate data is permissible if methods of analysis insure that an accurate finding is made, with protection from the possibility of distortion of the representative quality of the data. It is readily conceivable that, absent such safeguards, injury to a region could be found even though indicators for a significant number of the individual producers do not show injury, by merely combining these indicators with those from producers who do show losses. This is clearly at variance with the statutory requirement.

In light of the above, this matter is remanded to the ITC to determine whether Revere Sugar Corporation's Northeast regional operations, exclusive of the Chicago plant, suffered material injury. This determination must take into account the information on Revere's sales and profits for 1976 and 1977, unless the Commission chooses to disregard this data and gives its reasons for so doing. The ITC shall report to the Court within 120 days of the date of entry of this Order and the parties shall have 30 days thereafter to file briefs commenting on the redetermination.